IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FIRST CHRISTIAN ACADEMY, INC.,<br>*Plaintiff,* | §<br>§<br>§ | |
| v. | §<br>§ | CIVIL ACTION H-13-1452 |
| NEW HAMPSHIRE INSURANCE COMPANY,<br>*Defendant.* | §<br>§<br>§ | |

## MEMORANDUM OPINION & ORDER

Pending before the court are defendant New Hampshire Insurance Company's ("NHIC")

motion for summary judgment (Dkt. 11) and NHIC's motion to strike plaintiff's summary judgment

evidence (Dkt. 16). After considering the parties' briefing, record evidence, and applicable law, the

court is of the opinion that defendant's motion for summary judgment and motion to strike should

be GRANTED in part and DENIED in part.

## I. BACKGROUND

This insurance coverage dispute arises from a commercial property and general liability

insurance policy, Policy No. 01-LX-027562505-0 (the "Policy") issued to plaintiff from NHIC. Dkt.

11, Ex. A. The Policy was effective from June 15, 2011 to June 15, 2012.[1]  *Id.*  Plaintiff executed

a Premium Finance Agreement (the "Agreement") with Premium Convenience Services, Inc. in

order to finance the $10,925 Policy premium.  *Id.* at Ex. B.  In the Agreement, plaintiff gave

Premium Convenience Services authority to cancel the Policy in the event plaintiff failed to pay its

premiums.  *Id.*  The Policy and the Agreement both provided that the Policy could be cancelled for

---

[1] Plaintiff claims the Policy's effective period was from December 7, 2010 to December 7, 2011.
Dkt. 14 at 2. However, the Policy itself establishes that it was effective from June 15, 2011 to June 15, 2012.
Dkt. 11, Ex. A. While it is unclear how plaintiff discerned the policy period alleged in its briefing, it does
not affect the court's analysis in this case.

nonpayment of premiums, provided that at least 10 days written notice be given to plaintiff before the cancellation took effect.  *Id.*, Ex. A at 14.

Plaintiff failed to pay its premium on November 15, 2011.  *Id.* at Ex. C.  A notice of intent to cancel was sent to plaintiff on November 29, 2011, informing plaintiff that the Policy would be cancelled if the past due premium was not received by December 8, 2011.  *Id.*  The default was not cured by plaintiff, and the Policy was cancelled, effective December 10, 2011.  *Id.* at Ex. D.  NHIC and Premium Convenience Services both sent plaintiff the final cancellation notice.  *Id.*

Plaintiff filed suit in state court on April 19, 2013.  Dkt. 1, Ex. C.  Defendant timely removed this action to federal court.  Dkt. 1.  Based on the allegations in plaintiff's original petition, First Christian Academy, Inc. operated as an educational institution at 10950 Highland Meadow Village, Houston, Texas (the "Property").  Dkt. 1, Ex. C at 2.  The Property was insured for damages caused by acts of vandalism.  *Id.*  On or around December 28, 2011, the Property suffered extensive damage from acts of vandalism.  *Id.*  In its petition, plaintiff alleges December 28, 2011 as the only date of loss.  *Id.*  However, in response to NHIC's motion for summary judgment, plaintiff now alleges that it reported to the insurance company in February 2012 that acts of vandalism occurred dating back to September 2011. Dkt. 14, Ex. A.  In its summary judgment briefing, plaintiff also appears to have abandoned its position that it paid all Policy premiums in full, and instead argues that the first date of loss preceded the cancellation of the Policy.

Plaintiff brings multiple claims against NHIC alleging NHIC improperly denied coverage, failed to pay a covered claim, and inadequately investigated the loss.  Specifically, plaintiff asserts causes of action for:  (1) breach of contract; (2) violations of the Deceptive Trade Practices Act ("DTPA"); (3) violations of the Texas Insurance Code; (4) breach of duty of good faith and fair

2

dealing; (5) breach of fiduciary duty; (6) misrepresentation; (7) fraud by negligent misrepresentation; and (8) waiver and estoppel. Defendant moves for summary judgment, arguing that each of plaintiff's claims fail, as a matter of law, because the Policy was cancelled before the alleged date of loss. Defendant also moves to strike plaintiff's only summary judgment evidence– Diane Duvall's affidavit– on the basis that it is incompetent evidence devised solely to avoid summary judgment. Dkt. 16.

## II.  Legal Standard

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008). The moving party bears the initial burden of informing the court of evidence, if any, that demonstrates the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine dispute of material fact. *Id.* at 322. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986); *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005). A dispute is "material" if its resolution could affect the outcome of the action. *Anderson*, 477 U.S. at 248. The substantive law determines which facts are material in each case. Lastly, in determining whether a genuine dispute of material fact exists, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Id.* at 255; *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005).

### III. ANALYSIS

*A.     Summary Judgment Evidence*

Defendant maintains that each of plaintiff's causes of actions fail because it validly cancelled plaintiff's insurance coverage before the date of loss reported by plaintiff.  Specifically, because NHIC was no longer in a contractual relationship with plaintiff when the alleged vandalism occurred, NHIC contends that plaintiff's contractual or extra-contractual claims must fail.  Plaintiff submitted the affidavit of Diane Duvall ("Duvall"), owner and operator of First Christian Academy, as its only summary judgment evidence.  The affidavit injects new facts into the case and provides the only support against summary judgment with respect to plaintiff's claims.  Defendant moves to strike the affidavit on the bases that it is incompetent summary judgment evidence, lacks foundation, and is otherwise conclusory and self-serving.  Because this is the only piece of evidence supporting plaintiff's claims, the court will first address the admissibility of the statements in the affidavit.

Evidence supporting or opposing summary judgment may be submitted in affidavit form, so long as the affidavit is "made on personal knowledge . . . set[s] forth such facts as would be admissible in evidence, and . . . show[s] affirmatively that the affiant is competent to testify to the matters stated therein." FED. R. CIV. P. 56(e).  Evidence that would not be admissible at trial is not competent evidence to be considered during summary judgment. *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 192 (5th Cir. 1991).  "Unsubstantiated assertions are not competent summary judgment evidence," however a single affidavit can be sufficient to substantiate a party's allegations. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177 (1990) (the purpose of Rule 56 is to "enable a party who believes there is no genuine dispute as to a specific fact essential to the

4

other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues"); *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).   The court should only disregard those portions of the affidavit that would be inadmissible.  *Salas v. Carpenter*, 980 F.2d 299, 304 (5th Cir. 1992).

First, defendant contends that Duvall has not established her competency to swear to factual circumstances involving First Christian Academy or its insurance claim.  Defendant argues that the affidavit does not identify Duvall's position, title, duties, or affiliation with First Christian Academy. In response, plaintiff maintains that it is clear from the record that Duvall owned and operated First Christian Academy at all times relevant to this suit.  The court can consider the record evidence to determine if a party is competent to provide a sworn statement in support of summary judgment.  *See Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*, 831 F.2d 77, 80 (5th Cir. 1987) (failing to "affirmatively state in the document itself that [the proponents] are competent to testify as to the facts to which they swore does not necessarily doom their testimony.  Affidavits are to be considered in conjunction with other types of evidence before the court.").  Further, a party opposing summary judgment is usually held to a less exacting standard than those of the moving party.  *Id.*

While the affidavit does not include a sworn statement of Duvall's affiliation with First Christian Academy, additional record evidence sufficiently establishes that she owned and operated First Christian Academy at all times relevant to this lawsuit and is familiar with its insurance claim. In this case, Duvall signed the Premium Finance Agreement on behalf of First Christian Academy and submitted the Property Loss Notice for the school.  Dkt. 11, Exs. B, F.  She is also cited as the client representative in the demand letter sent to defendant.  Dkt. 15, Ex. K.  Duvall averred that she had personal knowledge regarding the statements contained in her affidavit, and the court finds this

5

is sufficient to establish her competency to make sworn statements regarding First Christian Academy and its insurance claim.

Further, defendant has lodged specific objections to each statement and paragraph contained in Duvall's affidavit.  The court will not address each of defendant's objections, but will only address the statements of fact contained in the affidavit that will be relevant to the court's analysis.  Unless otherwise noted, each of the foundation and personal knowledge objections made in relation to Duvall's affidavit are overruled for the same reasons the court overruled defendant's competency objections.  Relevant to the court's analysis, the court makes the following rulings to defendant's objections:

- Paragraph 3, Sentence 5:  Objections overruled because this is a factual statement within Duvall's personal knowledge.

- Paragraph 4, Sentence 1:  Objections overruled because this is a factual statement within Duvall's personal knowledge and does not contain an out of court statement constituting hearsay.

- Paragraph 4, Sentence 2:  Objections overruled and there is no evidence that a report or photograph exists, making the best evidence rule inapplicable.

- Paragraph 4, Sentence 3:  Objections overruled and there is no out of court statement constituting hearsay.

- Paragraph 4, Sentence 5:  Objections overruled because the statement is a factual assertion within Duvall's personal knowledge.

- Paragraph 4, Sentence 6:  Objections overruled because this is a factual statement within Duvall's personal knowledge.

- Paragraph 5:  Objections overruled because statements are based on Duvall's personal knowledge; however, the court will disregard sentence 2 as inadmissible hearsay.

- Paragraph 6:  Objections overruled because the paragraph consists of factual statements  within Duvall's personal knowledge.

6

- Paragraph 7, Sentence 1:  Hearsay objection sustained.

- Paragraph 7, Sentence 2:   Objections overruled because sentence contains factual information within Duvall's personal knowledge.

- Paragraph 7, Sentence 3:  Objections overruled and there is no evidence that a report or photograph exists, making the best evidence rule inapplicable.

- Paragraph 9:   Objections overruled because statements are based on personal knowledge of Duvall; however, the court will disregard sentence 3 because the statement lacks foundation.

- Paragraph 10, Sentence 5: Hearsay objection sustained.

- Paragraph 10, Sentences 6-7:  Objections overruled  because statements fall within Duvall's personal knowledge.

- Paragraph 12, Sentence 5:  Objections overruled because statement is based on Duvall's personal knowledge.

In sum, defendant's motion to strike plaintiff's affidavit is granted in part and denied in part. The court will not consider those portions of the affidavit for which it sustained defendant's objections and those portions which are otherwise inadmissible at trial.

> B.    *Breach of Contract*

Defendant contends that it did not breach the insurance contract because no contract existed on the date of loss claimed by plaintiff.  Plaintiff does not contest the cancellation of the Policy or the nonpayment of premiums resulting in cancellation; however, plaintiff maintains that covered property damage occurred before the Policy was effectively cancelled.  In order to establish breach of contract, plaintiff must prove: (1) a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of that breach.  *Aquila Sw. Pipeline, Inc. v. Harmony Exploration, Inc.*, 48 S.W.3d 225, 235 (Tex.

App.–San Antonio 2001, pet. denied).  A breach occurs when an insurer fails to pay a covered claim under an insurance policy. *Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 254 (5th Cir. 2011) (citing *D.R. Horton-Tex., Ltd. v. Market Int'l Ins. Co.*, 300 S.W.3d 740, 743 (Tex. 2009)).

In this case, there is no dispute that a valid and enforceable contract existed through December 10, 2011, the effective date of cancellation.  Plaintiff proffered Duvall's affidavit that she reported to the insurance company break-ins and vandalism "going back to September 2011" when First Christian Academy filed its claim.  Dkt. 14, Ex. A.  Defendant objects to this conclusory, unsubstantiated, and self-serving statement in Duvall's affidavit regarding earlier dates of loss, however, plaintiff merely has to show more than a scintilla of evidence to avoid summary judgment. More than a scintilla of evidence exists when reasonable and fair-minded people could differ in their conclusions.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505 (1986) (in the context of summary judgment, the "judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented").  Viewing the evidence in a light most favorable to the plaintiff, it has presented more than a scintilla of evidence creating a genuine issue of material fact regarding whether plaintiff is entitled to coverage for the occurrences before December 10, 2011. Thus, NHIC's motion for summary judgment with respect to plaintiff's breach of contract claim must be denied.

C.    *Extra-Contractual Claims*

Plaintiff's bad faith claims stem from allegations that NHIC wrongfully denied coverage, failed to pay policy proceeds for covered occurrences, and failed to reasonably investigate the insurance claim submitted by plaintiff.  Defendant presumes in its arguments against plaintiff's bad

faith claims that there is no coverage under the Policy, and therefore, any bad faith claims must necessarily fail.  Based on the court's ruling, however, to the extent the policy affords coverage, plaintiff's extra-contractual claims remain viable.  *State Farm Lloyds v. Page*, 315 S.W.3d 525, 532 (Tex. 2010).  Because the court has found that a question of material fact exists regarding whether the pre-cancellation incidents were covered by the Policy, the court must consider whether summary judgment is warranted on plaintiff's extra-contractual claims.  Plaintiff brings claims for breach of good faith and fair dealing, violations of the DTPA and Insurance Code, negligent misrepresentation, fraud, breach of fiduciary duty, and waiver and estoppel, which will be dealt with in turn.

     i.  *Breach of Good Faith & Fair Dealing*

   Texas law imposes a duty on insurers to "deal fairly and in good faith with its insured in the processing and payment of claims."  *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 340 (Tex. 1995). If an insurer denies a claim when the insurer knew or should have known that it was reasonably clear that the claim was covered, the insurer may be liable for breach of good faith.  *Aleman v. Zenith Ins. Co.*, 343 S.W.3d 817, 822 (Tex. App.–El Paso 2011, no pet.); *Parsaie v. United Olympic Life Ins. Co.*, 29 F.3d 219, 221 (5th Cir. 1994).  The focus of the bad faith inquiry is not on whether the insured's claim was valid, but on the reasonableness of the insurer's conduct in rejecting the claim. *Lyons v. Miller Cas. Ins. Co.*, 866 S.W.2d 597, 601 (Tex. 1993).  Whether a reasonable basis to deny a claim exists must be judged by the facts before the insurer at the time the claim was denied.  *Viles v. Security Nat'l Ins. Co.*, 788 S.W.2d 566, 567 (Tex. 1990).  The reasonableness of the insurer's conduct is generally a question of fact.  *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 56 (Tex. 1997).

A bona fide dispute about the insurer's liability on the insurance contract generally does not rise to the level of bad faith. *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 17 (Tex. 1994), *superseded by statute on other grounds*, TEX. CIV. PRAC. & REM. CODE § 41.001(11). However, this standard presumes that a reasonable investigation took place. *United Services Auto. Ass'n v. Croft*, 175 S.W.3d 457, 471 (Tex. Civ. App.–Dallas 2005, no pet.). An insurer must reasonably investigate a claim in order to determine whether its liability is reasonably clear in order to satisfy its duty of good faith and fair dealing. *Giles*, 950 S.W.2d at 56 n.5. An insurer is required "to investigate claims thoroughly and in good faith, and to deny those claims only after an investigation reveals that there is a reasonable basis to do so." *Viles v. Sec. Nat'l Ins. Co.*, 788 S.W.2d 566, 568 (Tex. 1990). Insurers cannot insulate themselves from bad faith liability by investigating a claim in a manner calculated to construct a pretextual basis for denial. *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44 (Tex. 1998).

Plaintiff argues that NHIC should have known it was reasonably clear that its claim for vandalism was covered and would have known had NHIC conducted a reasonable investigation. Here, plaintiff presented evidence that it reported to the insurance company that acts of vandalism and resultant property damage occurred going back to September 2011. Insurance companies "are responsible for the knowledge possessed by those whom they appoint as agents." *Md. Ins. Co. v. Head Indus. Coatings & Services, Inc.*, 906 S.W.2d 218, 229 (Tex. App.–Texarkana 1995), *rev'd on other grounds*, 938 S.W.2d 27 (Tex. 1996) (imputing to insurance company knowledge of its agent). With this knowledge, NHIC should have known that coverage was reasonably clear for the pre-cancellation incidents, or at a minimum, conducted further investigation into this aspect of the claim. NHIC does not address the information possessed by its agent when the loss was reported.

10

While the evidence is minimal regarding the report of earlier dates of loss and refuted by much of the record evidence, plaintiff has presented more than a scintilla of evidence creating a genuine issue of material fact that NHIC should have known coverage was reasonably clear and may not have reasonably investigated the claim to make this coverage determination.

> ii.    *Insurance Code & DTPA*

Plaintiff presents the same arguments and evidence to support its claims of violations of the Insurance Code and DTPA as it does for its common law bad faith claim.  Liability arises under the Insurance Code for failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear and for refusing to pay a claim without conducting a reasonable investigation.  TEX. INS. CODE §§ 541.060(a)(2)(A), 541.060(a)(7); *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 77 S.W.3d 253, 260 (Tex. 2002).  A person may bring a claim for those damages sustained by acts constituting unfair or deceptive practices as defined in Subchapter B of the Insurance Code or as enumerated in Section 17.46(b) of the Business & Commerce Code.  TEX. INS. CODE § 541.151.  Similarly, the DTPA authorizes suit where a consumer, including an insured, relies on a deceptive practice or act to their detriment.  TEX. BUS. COMM. CODE § 17.50(a); *Penn-Am. Ins. Co. v. Zertuche*, 770 F. Supp. 2d 832, 840 (W.D. Tex. 2011).

The predicate for recovery for a common law bad faith claim is the same as that for extra-contractual tort claims brought under the Insurance Code and the DTPA.  *Mid-Century Ins. Co. of Tex. v. Boyte*, 80 S.W.3d 546, 549 (Tex. 2002); *Giles*, 950 S.W.2d at 55.  Having found that plaintiff has established a genuine issue of material fact with regard to its bad faith claim, the court also finds,

11

for the same reasons, that plaintiff's Insurance Code and DTPA claims for failing to attempt to effectuate a prompt settlement and failing to reasonably investigate the claim will likewise stand.

The remainder of the claims filed by plaintiff under the DTPA and Insurance Code allege some form of misrepresentation made by NHIC.[2]  The court will discuss this aspect of the claim in further detail *infra*; however, plaintiff has not shown any evidence of an affirmative misrepresentation made regarding coverage or the Policy.  "In the absence of some specific misrepresentation by the insurer or agent about the insurance, a policyholder's mistaken belief about the scope or availability of coverage is not generally actionable under the DTPA." *Sledge v. Mullin*, 927 S.W.2d 89, 94 (Tex. App.–Fort Worth 1996, no writ).  Thus, any claims based on a misrepresentation under the DTPA or the Insurance Code are dismissed as a matter of law.

     *iii.*    *Misrepresentation Claims*

Plaintiff also asserts claims for negligent misrepresentation and fraud by negligent misrepresentation.  Under either claim, plaintiff must establish a false representation was made by defendant.[3]  Outside of the terms of the Policy, the only representations made by NHIC to plaintiff

---

[2]  While plaintiff does not address defendant's alleged unconscionable action in its summary judgment briefing, it also brought a claim under the DTPA for alleged unconscionable conduct by NHIC. Under the DTPA, an "unconscionable action" is defined as "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code § 17.45(5).  Plaintiff has not shown any action on the part of defendant that would constitute an unconscionable act.

[3]  In order to establish a claim of negligent misrepresentation, plaintiff must prove:  (1) the representation was made by a defendant in the course of business, or in a transaction in which defendant had a pecuniary interest; (2) the defendant supplied "false information" for the guidance of others in business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation. *Miller v. Raytheon Aircraft Co.*, 229 S.W.3d 358, 379 (Tex. App.–Houston [1st Dist.] 2007, no pet.).

To prove fraud, plaintiff must show: (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it

related to the cancellation of coverage.  Plaintiff does not challenge the basis of the cancellation, or otherwise identify any misrepresentation or false information communicated to plaintiff which caused injury beyond the denial of coverage.  Instead, the misrepresentation claims alleged by plaintiff are based solely on the language of the contract, and not any representations made by defendant.  *See* Dkt. 14 at 10 ("representations were made, through the mere language of the Policy itself").  However, plaintiff's allegations amount to a breach of contract claim, not a claim for misrepresentation.  *Heller v. Ace European Group Ltd.*, 2013 WL 6589253, *2 (S.D. Tex. Dec. 16, 2013) ("[A]n allegation of breach of contract does not allege misrepresentation without more." ).  Therefore, plaintiff has failed to identify any misrepresentation that would sustain its misrepresentation or fraud claims.

iv.    *Breach of Fiduciary Duty*

Plaintiff's breach of fiduciary duty claim also fails as a matter of law.  Texas law does not recognize a general fiduciary duty between an insurer and its insured.  *Garrison Contractors, Inc. v. Liberty Mut. Ins. Co.*, 927 S.W.2d 296, 301 (Tex. App.–El Paso 1996), *aff'd*, 966 S.W.2d 482 (Tex. 1998); *Wayne Duddlesten, Inc. v. Highland Ins. Co.*, 110 S.W.3d 85, 96 (Tex. App.–Houston [1st Dist.] 2003, pet. denied).  Plaintiff does not address this claim in its response.  Because an insurer does not owe a general fiduciary duty to its insured, NHIC is entitled to summary judgment on plaintiff's breach of fiduciary duty claim.

---

recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.  *Rhine v. Priority One Ins. Co.*, 411 S.W.3d 651, 659 (Tex. App.–Texarkana 2013, no pet.) (citations omitted).

> v.      *Prompt Payment of Claims*

Plaintiff also asserts that NHIC violated the Prompt Payment of Claims Act by delaying payment of the claim following receipt of all items, statements, and forms reasonably requested. TEX. INS. CODE § 542.058.  Section 542.058 provides that an insurer is liable for statutory damages if, after receiving all items, statements, and forms reasonably requested and required, it delays payment of the claim for a period of more than 60 days.  *Id.*

As previously discussed, there is a genuine issue of material fact as to whether NHIC conducted a reasonable investigation and properly denied the claim with regard to any dates of loss preceding December 10, 2011.  Plaintiff has presented uncontroverted evidence that it provided all the documents requested by NHIC.  Further, NHIC chose to reject plaintiff's claim, which necessarily means that it failed to pay the claim within the 60 days permitted under the statute. *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 461 (5th Cir. 1997).  Because the issue of NHIC's liability under the Policy remains unresolved, a determination as to whether NHIC wrongfully delayed payment also remains an open question.  *See Lee v. Catlin Specialty Ins. Co.*, 766 F. Supp. 2d 812, 826-27 (S.D. Tex. 2011) ("A determination as to whether [insurer] wrongfully delayed payment is dependent on the unresolved issue of whether [insurer] is liable under the policy.").  Therefore, the court further denies NHIC's motion for summary judgment on Plaintiff's prompt payment claim.

> D.      *Waiver and Estoppel*

Finally, plaintiff claims that NHIC cannot deny coverage under principles of waiver and estoppel.  Waiver or estoppel will only prevent NHIC from enforcing its cancellation of the Policy if:  (1) the insurer had knowledge of the facts constituting forfeiture; (2) the forfeiture was complete

14

and absolute; and (3) an unequivocal act on the insurer's part recognized the continuance of the policy, or was wholly inconsistent with forfeiture. *Preferred Risk Mut. Ins. Co. v. Rabun*, 561 S.W.2d 239, 240 (Tex. Civ. App.–Austin 1978, writ dism'd); *Penn-Am. Ins. Co. v. Zertuche*, 770 F. Supp. 2d 832, 846 (W.D. Tex. 2011).  NHIC denied plaintiff's claim on the basis that the Policy had been cancelled prior to the date of loss alleged, and therefore, did not have a duty to cover plaintiff's claims.  NHIC has never deviated from this ground as the reason for its denial of coverage.  There is no evidence that NHIC waived its assertion of cancellation or at any point led plaintiff to believe that the cancellation was not effective.  Further, estoppel cannot be used to create insurance coverage where none exists under the terms of the policy. *Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 203 (Tex. 2004).  It is undisputed that the cancellation was effective for any alleged losses after December 10, 2011.  Therefore, there has been no unequivocal act on the part of NHIC, which recognized the continuance of the policy or was otherwise inconsistent with cancellation.

## IV. CONCLUSION

In sum, plaintiff's claims survive only to the extent they are based on denial of coverage and claims handling procedures, not on any alleged misrepresentations of coverage or waiver by NHIC. While the proof may be thin, the court must resolve all reasonable inferences in favor of plaintiff. On the record presented before this court, plaintiff has established a genuine issue of material fact regarding whether coverage existed under the Policy for any alleged incidents of vandalism preceding the effective date of the cancellation and whether NHIC conducted a reasonable investigation into coverage for these earlier acts of vandalism.

It is so ORDERED.

Signed at Houston, Texas on July 1, 2014.

Gray H. Miller
United States District Judge